Emily L. Robinson, Esq. (SBN 285343)
Law Office of Emily L. Robinson
5012 Eagle Rock Blvd.
Los Angeles, CA 90041
emily@lawofficeemilyrobinson.com
(323) 524-7611
(323) 524-4001

Counsel for Petitioner

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

MARIA DEL ROSARIO VÁZQUEZ RAMÍREZ,

(A# 234-191-308)
Petitioner,
vs.

Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; Todd BLANCHE, Acting U.S. Attorney General; David VENTURELLA, Acting Director, Immigration and Customs Enforcement; Andre QUINONES, Acting Director, Los Angeles Field Office, Immigration and Customs Enforcement, Enforcement and Removal Operations; Fereti SEMAIA, Warden, Adelanto ICE Processing Center; DIRECTOR, U.S. Citizenship and Immigration Services; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; and U.S. DEPARTMENT OF HOMELAND SECURITY,

Respondents.

Case No. ________________

**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS**

**IMMIGRATION HABEAS CASE — DETAINED**

## INTRODUCTION

1. Petitioner Maria del Rosario Vázquez Ramírez is a 42-year-old native and citizen of Mexico who has lived in Los Angeles since she entered the United States in 2005. She is married to Walter Alfredo Moran Jerez, a 62-year-old United States citizen, and is the mother of a minor United States citizen child who lives with them. For nearly two decades she worked alongside Mr. Moran Jerez at the same cleaning service; since their marriage she has run their household, cared for her son, and helped administer the rental unit attached to their home. She has no criminal record, has never been detained by immigration authorities, and has never been ordered removed. On November 6, 2026, she went to the U.S. Citizenship and Immigration Services ("USCIS") Application Support Center in Gardena, California ("ASC"), for a biometrics appointment that USCIS had scheduled and that federal regulations required her to attend. She left in ICE custody. USCIS personnel separated her from her husband, told him there was a problem with her identification, and two ICE officers came into the room where she was waiting and took her into custody. Respondents have held her ever since.

2. Petitioner was at the ASC because she was following the procedure the Department of Homeland Security created for families like hers. Her husband petitioned for her on Form I-130 in March 2024, and USCIS approved the petition on May 1, 2026. Because she entered without inspection, she must complete her immigrant visa abroad, and leaving the country after more than a year of unlawful presence ordinarily triggers a ten-year bar to return. 8 U.S.C. § 1182(a)(9)(B)(i)(II). DHS established the Form I-601A provisional unlawful-presence waiver so that the spouses of United States citizens could seek a waiver of that bar *before* departing, precisely to shorten the separation of citizen families. 78 Fed. Reg. 536, 536–37 (Jan. 3, 2013); 81 Fed. Reg. 50,244, 50,245–46 (July 29, 2016). The regulation requires the applicant to give biometrics at a USCIS location in the United States and treats a failure to appear as abandonment, requiring denial. 8 C.F.R. § 212.7(e)(3)(ii), (e)(6)(ii). Petitioner filed her I-601A through counsel, USCIS received it on October 9, 2026, and USCIS then told her where and when to appear.

3. The only explanation an officer gave her husband for the arrest was that Petitioner was not in the United States legally. That was not news to DHS. Her entry without inspection and lack of status were disclosed in the application USCIS had summoned her to support; they are the reason the I-601A process exists. By the morning of November 6, DHS knew her name, her date of birth, her home address, her husband, her son, her immigration history, and exactly where she would be standing at 9:00 a.m., because it had chosen the time and place.

4. Petitioner's detention is unlawful on several distinct grounds, and each of them, standing alone, requires that this Court order her release rather than remit her to further agency process. Section 1226(a) permits an immigration arrest only "[o]n a warrant issued by the Attorney General," 8 U.S.C. § 1226(a), and the narrow exception in 8 U.S.C. § 1357(a)(2) permits a warrantless arrest only where an officer has reason to believe both that the person is unlawfully present and that she "is likely to escape before a warrant can be obtained for [her] arrest." Upon information and belief, Respondents had no warrant when they arrested her, and none has been produced to Petitioner or her counsel, and no officer could reasonably have believed that a woman who had just checked in for a government appointment, with her husband in the lobby and her address in the government's file, would escape before a warrant could be obtained. Because she presented herself to the Government at its direction, there was no flight concern at all. A Form I-200 or Notice to Appear prepared after she was restrained cannot authorize the restraint that preceded it. *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018). And Respondents have never made, or disclosed, the individualized custody determination that civil detention under § 1226(a) requires. 8 C.F.R. §§ 236.1(c)(8), 287.3(d).

5. The setting compounds every one of these defects. Respondents did not encounter Petitioner by chance. They used a compulsory step in a family-unity program to bring her into the ASC, separated her from the husband whose hardship was the subject of her pending application, and turned her over to ICE behind a closed door. A program DHS created to reduce the separation of United States citizen families became the occasion for imposing that separation immediately. Courts have rejected the use of a required immigration-benefits

appointment as the occasion for arrest. *Xiu Qing You v. Nielsen*, 321 F. Supp. 3d 451, 466 (S.D.N.Y. 2018). And courts in this District have ordered immediate release, not a bond hearing, of applicants arrested at USCIS appointments, *Ma v. Warden*, No. 5:26-cv-05707-KK-DFM, ECF No. 9 (C.D. Cal. Oct. 8, 2026); *Okeshov v. Santacruz*, No. 5:26-cv-06187-AS, ECF No. 12 (C.D. Cal. Nov. 3, 2026), and of persons held under § 1226(a) without the initial custody determination it requires, *Dorantes Saldivar v. Warden of Adelanto ICE Processing Ctr.*, No. 5:26-cv-06400-DTB, ECF No. 14, at 11–16 (C.D. Cal. Nov. 6, 2026).

6. A bond hearing would not remedy any of this. An immigration judge deciding bond asks whether a person already lawfully held should be released going forward; he cannot supply a warrant that did not exist, make an escape determination no officer made, or restore the initial custody decision that was skipped. Sending Petitioner to bond would also require a United States citizen family that has already paid to pursue the lawful immigrant visa process to pay again, in a forum where denials have risen to 57.4% of completed bond records and the median bond has risen to $10,000, for release from a custody that should never have begun. Mr. Moran Jerez has uncontrolled Type 2 diabetes, hypertension, and dyslipidemia, and the declarations already in USCIS's file explain that Petitioner is the person who watches over his health and persuades him to return to his doctors. Further, Petitioner is the mother of a minor United States citizen child, who has been without his mother since November 6. Her detention serves no legitimate, nonpunitive purpose. This Court should grant the Petition, declare Petitioner's arrest and detention unlawful, and order her immediate release.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 2241 (habeas corpus); 28 U.S.C. § 1331 (federal question); U.S. Const. art. I, § 9, cl. 2 (Suspension Clause); and 5 U.S.C. § 702 (Administrative Procedure Act). The Court may grant relief under § 2241, 28 U.S.C. § 2243, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the All Writs Act, 28 U.S.C. § 1651.

8. Congress has preserved judicial review of legal and constitutional challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001); *Jennings v. Rodriguez*, 583 U.S. 281, 293–96 (2018); *Hernandez v. Sessions*, 872 F.3d 976, 987–88 (9th

Cir. 2017). Section 1226(e) does not bar review, because a claim that an arrest and custody decision proceeded without legal authority or through constitutionally deficient procedures is a question of law cognizable on habeas. *Martinez v. Clark*, 124 F.4th 775, 783–85 (9th Cir. 2024).

9. Section 1252(g) applies only to the three discrete actions it names: the decision to "commence proceedings, adjudicate cases, or execute removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Section 1252(b)(9) does not convert an independent challenge to custody into review of a removal order. *Jennings*, 583 U.S. at 293–95. Petitioner is not subject to any order of removal. She does not ask this Court to review any decision to commence proceedings, to terminate proceedings, to approve her I-601A, to grant her any immigration status, or to suppress any evidence. She challenges the legal authority for the physical custody in which Respondents hold her now. Decisions addressing whether a defective arrest invalidates later removal proceedings therefore have no bearing on her claims. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039–40 (1984). Habeas "is at its core a remedy for unlawful executive detention," *Munaf v. Geren*, 553 U.S. 674, 693 (2008), and "the traditional function of the writ is to secure release from illegal custody," *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117–18 (2020).

10. Venue is proper in the Central District of California under 28 U.S.C. § 1391(e) and the immediate-custodian rule of *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004). Petitioner is detained at the Adelanto ICE Processing Center in Adelanto, California, Robinson Decl. Ex. A (ICE Online Detainee Locator), and the arrest occurred at the ASC in Gardena, Los Angeles County, both within this District.

**REQUIREMENTS OF 28 U.S.C. § 2243**

11. The Court must grant the petition for writ of habeas corpus or issue an order to show cause to Respondents "forthwith," unless Petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require Respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* The return must "certify[] the true cause of the detention." *Id.*

12. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (citation omitted), *overruled in part on other grounds by Coleman v. Thompson*, 501 U.S. 722 (1991). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (quoting *Ruby v. United States*, 341 F.2d 585, 587 (9th Cir. 1965)).

13. The facts that decide this Petition are in Respondents' exclusive possession: whether any Form I-200 existed when Petitioner was restrained, when any Notice to Appear was issued, who signed each, what any officer knew and concluded about likelihood of escape before the arrest, whether any custody determination was made, and whether ICE selected Petitioner for arrest before she arrived. A form bearing a typed date, or a declaration summarizing the agency's view, does not establish when arrest authority actually arose. Petitioner therefore asks that the return be accompanied by the contemporaneous, time-stamped records identified in the Prayer for Relief. The Court may require production of those records and expand the record under Rules 1(b), 6(a), and 7(a) of the Rules Governing Section 2254 Cases. *Harris v. Nelson*, 394 U.S. 286, 300 (1969).

## PARTIES

14. Petitioner MARIA DEL ROSARIO VÁZQUEZ RAMÍREZ is a native and citizen of Mexico, Alien Registration Number A 234-191-308. She is detained at the Adelanto ICE Processing Center in Adelanto, California.

15. Respondent Markwayne MULLIN is the Secretary of Homeland Security, responsible for the implementation and enforcement of the Immigration and Nationality Act, including the operations of ICE and USCIS, with ultimate custodial authority over Petitioner. He is sued in his official capacity.

16. Respondent Todd BLANCHE is the Acting Attorney General of the United States, responsible for the Department of Justice, of which the Executive Office for Immigration Review is a component. He is sued in his official capacity.

17. Respondent David VENTURELLA is the Acting Director of U.S. Immigration and Customs Enforcement, which operates the immigration detention system. He is sued in his official capacity.

18. Respondent Andre QUINONES is the Acting Field Office Director of the Los Angeles Field Office of ICE Enforcement and Removal Operations, which, on information and belief, made the challenged arrest and custody decisions and has custody of persons held at ICE facilities within its Area of Responsibility, including the facility where Petitioner is held. He is sued in his official capacity.

19. Respondent Fereti SEMAIA is the Warden of the Adelanto ICE Processing Center and is Petitioner's immediate physical custodian. He is sued in his official capacity.

20. Respondent DIRECTOR, U.S. Citizenship and Immigration Services, is responsible for the adjudication of Petitioner's pending Form I-601A and for the operation of the ASC, and is sued in an official capacity, designated by title pursuant to Federal Rule of Civil Procedure 17(d).

21. Respondents EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, and U.S. DEPARTMENT OF HOMELAND SECURITY are the federal agencies responsible, respectively, for custody redeterminations in removal proceedings, for the detention and removal of noncitizens, for adjudication of Petitioner's pending application and the appointment at which she was arrested, and for implementing and enforcing the Act.

## STATEMENT OF FACTS

### A. More Than Twenty Years in Los Angeles and a United States Citizen Household

22. Petitioner was born in Cocula, Jalisco, Mexico, in 1984. Robinson Decl. ¶ 4 & Robinson Decl. Ex. B; Robinson Decl. Ex. C at 7. She entered the United States without

inspection in or about 2005, more than twenty years ago, and has lived in Los Angeles ever since. Robinson Decl. Ex. C at 8–9. She has never been arrested or convicted of any crime, has never been detained by immigration authorities, and has never been subject to ICE reporting or supervision. *Id.* at 9. She has never been placed in removal proceedings, and to this day the Executive Office for Immigration Review has no case for her A-number. Robinson Decl. ¶ 18 & Robinson Decl. Ex. G.

23. Mr. Moran Jerez was born in El Salvador, has lived in the United States since 1980, and has been a naturalized United States citizen for more than twenty-five years. Robinson Decl. Ex. C at 6. He has worked as a self-employed maintenance man for decades. *Id.* He and Petitioner met in 2006, when she began working at the cleaning service where he worked, and they were coworkers for years before they became a couple; they married in September 2023. *Id.* at 6–7, 11–12. They live in Los Angeles, in the home he owns, together with Petitioner's minor United States citizen child. *Id.* at 6, 9, 12. Since the marriage, Petitioner has run the household, cared for her child, and helped administer the rental unit attached to their home. *Id.* at 3, 12.

**B. The Approved Family Petition and the Purpose of the I-601A Provisional Waiver**

24. Mr. Moran Jerez filed a Form I-130, Petition for Alien Relative, on Petitioner's behalf on March 27, 2024, and USCIS approved it on May 1, 2026, forwarding it to the Department of State's National Visa Center for consular processing. Robinson Decl. Ex. D (I-130 Approval Notice). The family paid the immigrant visa processing fee on June 2, 2026. Robinson Decl. Ex. E (NVC Fee Payment Receipt).

25. Because Petitioner entered without inspection, she cannot ordinarily adjust status in the United States, 8 U.S.C. § 1255(a), and must complete her immigrant visa at a consulate abroad. Her departure after more than a year of unlawful presence would ordinarily trigger a ten-year bar to readmission. 8 U.S.C. § 1182(a)(9)(B)(i)(II). Congress authorized a waiver of that bar where refusal of admission would cause extreme hardship to a United States citizen or lawful permanent resident spouse or parent. *Id.* § 1182(a)(9)(B)(v).

26. Before 2013, an applicant in Petitioner's position had to leave the United States, attend her consular interview, be found inadmissible, and only then apply for the waiver, remaining abroad, separated from her family, while it was adjudicated. DHS created the Form I-601A provisional unlawful-presence waiver to permit eligible immigrant visa applicants to seek that waiver before departing, explaining that the procedure would reduce the time United States citizens are separated from their family members and the humanitarian and financial hardship that separation causes. 78 Fed. Reg. at 536–37. DHS reaffirmed that family-unity purpose when it expanded the program in 2016. 81 Fed. Reg. at 50,245–46.

27. A provisional waiver does not confer lawful status, employment authorization, or protection from removal. 8 C.F.R. § 212.7(e)(2). But the program is by design one for persons who are physically present in the United States without lawful status and are pursuing immigrant visas through consular processing. *Id.* § 212.7(e)(3). An applicant's unlawful presence is not a fact the program uncovers; it is the premise of every application.

28. Petitioner filed her Form I-601A through her immigration counsel, and USCIS received it on October 9, 2026. Robinson Decl. Ex. B. The application disclosed her full name, A-number, date of birth, residential address, the approved I-130, her entry without inspection in 2005, and her immigration history, together with declarations and documentary evidence of the hardship her husband would suffer if the family were separated. *Id.*; Robinson Decl. Ex. C.

**C. Respondents Are Well Aware of the Hardships Petitioner and Her Family Face**

29. Petitioner's I-601A submission included declarations from both spouses, together with her husband's medical records and documentation of the family's finances. *See* Robinson Decl. Ex. C. The declarations explain that Mr. Moran Jerez, who is 62, has Type 2 diabetes that is currently uncontrolled, along with high blood pressure and high cholesterol; that he stopped taking his diabetes medication because of its side effects; and that Petitioner is the person who watches his condition and persuades him to return to his doctors and resume treatment. *Id.* at 1–2. They also describe how she helped him recover from the end of his previous marriage, and why losing her would leave him without the support on which his health depends. *Id.* at 2, 6–7, 11–12. All of this was in USCIS's possession before November 6, 2026.

30. Petitioner's minor United States citizen child is not the qualifying relative for the waiver, but the consequences of his mother's absence bear directly on the family's hardship and on the urgency of relief. Since November 6, he has been without the parent who cared for him every day, and Mr. Moran Jerez has had to manage his own medical conditions, the household, and the family's finances without Petitioner.

31. The household lives within narrow means. Its income goes almost entirely to the mortgage on the family home and the attached rental unit and to ordinary living expenses, and the family has no savings and past-due bills it is working to pay down. Robinson Decl. Ex. C at 3–5. The family has already paid for immigration counsel and government fees to pursue the lawful immigrant visa process. Robinson Decl. Exs. B, E. Petitioner's detention has deprived the household of her labor and care, including the work she does keeping the rental unit running, and has imposed new legal expenses.

**D. USCIS Required Petitioner to Appear for Biometrics, and She Appeared**

32. The I-601A regulation requires the applicant to provide biometrics to USCIS at a location in the United States designated by USCIS. 8 C.F.R. § 212.7(e)(3)(ii), (e)(6)(i). If the applicant fails to appear for the scheduled biometrics appointment, USCIS considers the application abandoned and denies it. *Id.* § 212.7(e)(6)(ii).

33. By notice dated October 16, 2026, USCIS scheduled Petitioner's biometrics for November 6, 2026, at 9:00 a.m., at the ASC, 15715 Crenshaw Boulevard, Room B-112, Gardena, California. Robinson Decl. Ex. F (ASC Appointment Notice). The notice warned in capital letters: "IF YOU FAIL TO APPEAR AS SCHEDULED, USCIS WILL CONSIDER YOUR BENEFIT REQUEST ABANDONED AND IT MAY BE DENIED." *Id.* It directed her to bring the notice and government-issued photo identification. *Id.* To continue pursuing her waiver, Petitioner had no choice but to attend.

34. Petitioner arrived as directed, with her husband, and checked in. USCIS personnel then placed her in a separate waiting area apart from her husband. When Mr. Moran Jerez asked why the appointment was taking so long, USCIS personnel told him there was a discrepancy involving her date of birth or her identification documents. Robinson Decl. ¶¶ 12–

13. No one has identified what the discrepancy was or produced any record of it. The documents in USCIS's own file explain any apparent difference.

**E. Petitioner's Apprehension and Detention**

35. Two ICE officers then entered the area where Petitioner was waiting and announced that she was being detained. Mr. Moran Jerez protested that the family had retained counsel and had done everything USCIS required. An officer responded that Petitioner was not in the United States legally. No officer identified a warrant, a Notice to Appear, a criminal charge, a missed appearance, or any reason to believe that Petitioner would flee. Mr. Moran Jerez does not believe that Petitioner's biometrics appointment was ever completed before she was turned over to ICE. Robinson Decl. ¶¶ 14–15.

36. The reason the officer gave was not a new discovery. Petitioner's lack of lawful status was disclosed in the application for which USCIS had required her appearance, and it is the premise of every I-601A application. *Supra* ¶¶ 26–28. Nothing in the information available to Petitioner suggests that officers learned anything at the appointment about her immigration history, any criminal conduct, or any risk of flight.

37. Petitioner reports that other applicants were also taken into ICE custody during the same appointment period. Robinson Decl. ¶ 16. Contemporaneous reporting describes immigration enforcement activity at Southern California Application Support Centers in the days before her arrest, including a DHS vehicle seen leaving the Gardena center at approximately 9:40 a.m. on November 4, 2026, an arrest by ICE agents at the USCIS center on South La Brea Avenue the same day, and reports from community rapid-response organizers that arrests at application support centers have become increasingly frequent. *ICE Arrests and Sightings Across LA County, Nov. 1–5*, L.A. Pub. Press (Nov. 5, 2026), https://lapublicpress.org/2026/11/migra-in-la-county-ice-dhs-sightings/. Petitioner does not offer those reports as proof of a formal policy or of the number of arrests. They bear on whether ICE selected Petitioner, or applicants like her, for arrest before she arrived, and on what Respondents must produce.

38. Respondents had her identity, her address, her immigration history, and the date, time, and location of her appointment. If ICE decided to arrest her before the appointment, it had days or weeks to issue a Notice to Appear and seek a warrant from an independent officer. If ICE claims it decided only during the appointment, it must identify when that decision was made, on what facts, by whom, and why a warrant could not be obtained while Petitioner sat in the ASC with her husband waiting outside.

39. Petitioner was transferred to the Adelanto ICE Processing Center, where ICE's online detainee locator lists her in custody. Robinson Decl. Ex. A. Neither Petitioner nor her counsel has received any Form I-200 Warrant for Arrest of Alien, any Notice to Appear, any Form I-213, any Form I-286 Notice of Custody Determination, or any other statement of the authority for her arrest or the reasons for her continued detention. Robinson Decl. ¶ 17. On information and belief, no Form I-200 existed when Petitioner was restrained, no Notice to Appear had been issued at that time, no officer made a pre-arrest determination that she was likely to escape before a warrant could be obtained, and no officer has made an individualized determination that she poses a danger or a flight risk.

40. No immigration judge has reviewed Petitioner's custody, and no judge of any kind has determined whether probable cause supported her arrest. No Notice to Appear has been filed with the immigration court. As of November 12, 2026, six days after her arrest, EOIR's Automated Case Information system returns "No case found for this A-Number" for Petitioner, Robinson Decl. ¶ 18 & Ex. G, and on the same day the immigration court clerk confirmed to counsel's office that no case has been opened, *id.* ¶ 19. Removal proceedings commence only when a Notice to Appear is filed with the immigration court. 8 C.F.R. § 1003.14(a). Respondents are thus holding Petitioner in civil detention "pending a decision on whether the alien is to be removed," 8 U.S.C. § 1226(a), without having initiated any proceeding in which that decision could be made. She has been detained continuously since November 6, 2026. Her son remains without his mother, her husband remains without the care the I-601A record shows he depends on, and her I-601A remains pending with its biometrics requirement unfulfilled because of an arrest at the biometrics appointment itself.

## LEGAL BACKGROUND

### A. Petitioner Is Detained Under § 1226(a)

41. Noncitizens who entered without inspection and are apprehended in the interior are subject to § 1226(a), not mandatory detention under § 1225(b)(2). *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164–65 (9th Cir. 2026). Petitioner was apprehended in Los Angeles County after more than twenty years of residence, not at or near the border. She has no criminal history that could implicate § 1226(c) and no removal order that could implicate § 1231. If Respondents contend that some other statute governs her detention, they must identify it in their return.

42. Section 1226(a) "and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decision maker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022). Those protections presuppose a lawful arrest and an initial custody determination by the agency, which the immigration judge's hearing then reviews rather than replaces.

### B. Section 1226(a) Requires a Warrant Obtained Before the Arrest and an Individualized Custody Determination

43. Section 1226(a) authorizes an arrest "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). The warrant must exist before officers take the person into custody, because the statute "authorizes detention only '[o]n a warrant issued' by the Attorney General leading to the alien's arrest." *Jennings*, 583 U.S. at 302. "The federal statutory structure instructs when it is appropriate to arrest an alien during the removal process," *Arizona v. United States*, 567 U.S. 387, 407 (2012), and a form completed after the person is already restrained does not satisfy it. The implementing regulation imposes a further and distinct requirement concerning the charging document: an arrest may be made under the authority of Form I-200

only "[a]t the time of issuance of the notice to appear, or at any time thereafter." 8 C.F.R. § 236.1(b)(1).

44. Detention following a lawful arrest is discretionary: the Attorney General "may continue to detain the arrested alien" or "may release the alien" on bond or conditional parole. 8 U.S.C. § 1226(a)(1)–(2). An officer makes the initial custody determination and may release the noncitizen where release "would not pose a danger to property or persons" and she "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). After a warrantless arrest, "a determination will be made within 48 hours of the arrest," absent an emergency or other extraordinary circumstance, "whether the alien will be continued in custody or released on bond or recognizance." 8 C.F.R. § 287.3(d). Review before an immigration judge follows that determination. 8 C.F.R. §§ 236.1(d)(1), 1003.19.

45. Immigration detention is civil and may not be punitive. *Zadvydas*, 533 U.S. at 690. It may serve only two purposes, "ensuring the appearance of aliens at future immigration proceedings" and "[p]reventing danger to the community," *id.*, and it must bear a reasonable relation to those purposes, *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

46. Courts applying § 1226(a) have ordered release where officers did not issue a Notice to Appear before or together with the detention, did not arrest on or after the issuance of a warrant, made no initial custody determination before or at the time of detention, or never told the noncitizen the basis for continued detention, treating each omission as independently sufficient. *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-05661-DAD-SCR (HC), 2026 WL 2294963, at *2–3 (E.D. Cal. Aug. 10, 2026) (collecting cases). ICE does not have the "free-ranging ability to arrest and detain people, and figure out the reasons later." *Gopie v. Lyons*, No. 25-cv-05229-SJB, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025). Where no initial custody determination was made, a later bond hearing leaves the detainee to "guess the basis for ICE's determination that he is dangerous or a flight risk and

then disprove it." *Quijay Garcia v. Mattos*, No. 2:26-cv-01205-RFB-BNW, 2026 WL 1972386, at *5–8 (D. Nev. July 8, 2026).

**C. A Valid Immigration Warrant Also Requires a Prior or Contemporaneous Notice to Appear and an Independent Issuing Officer**

47. Because the regulation permits an arrest under Form I-200 only "[a]t the time of issuance of the notice to appear, or at any time thereafter," 8 C.F.R. § 236.1(b)(1), "the notice to appear is a precondition to an otherwise substantively valid arrest warrant," *M-J-M-A- v. Hernandez*, No. 6:25-cv-02011-MTK, ECF No. 170, at 9 (D. Or. Nov. 2, 2026) (citing *Yith v. Nielsen*, 881 F.3d 1155, 1167 (9th Cir. 2018)). An I-200 "cannot be used to effectuate an arrest before an NTA has been issued." *Quintero Meza v. Genalo*, 2026 WL 2875630, at *2 (S.D.N.Y. Sept. 24, 2026) (quoting *Yeleshev v. LaRocco*, No. 2:26-cv-02294-SJB, 2026 WL 1353806, at *2 (E.D.N.Y. May 14, 2026)). That defect "alone is sufficient to render the arrest improper and justify Petitioner's release." *Quintero Meza*, 2026 WL 2875630, at *3; *Zurita Navarro*, 2026 WL 2294963, at *2.

48. The warrant must also come from an officer independent of the arrest. An immigration officer "may not arrest and search on his own"; "[a]pplication for a warrant must be made to an independent responsible officer." *Abel v. United States*, 362 U.S. 217, 236 (1960). A valid civil immigration warrant therefore requires "(1) a simultaneous or prior issuance of a Notice to Appear, and (2) a sufficiently independent executive officer issuing the warrant." *M-J-M-A-*, ECF No. 170, at 11. "If ICE officials fail to meet those requirements when issuing or executing a warrant, then the arrest warrant is invalid, and any arrest pursuant to the invalid warrant is necessarily a warrantless arrest." *Id.*

**D. Statutory and Constitutional Limits on Warrantless Immigration Arrests**

49. "If no federal warrant has been issued, those officers have more limited authority." *Arizona*, 567 U.S. at 408. Section 1357(a)(2) permits a warrantless arrest only where the officer has "reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *accord* 8 C.F.R. § 287.8(c)(2)(i)–(ii). The Ninth Circuit has

equated the "reason to believe" standard with the constitutional requirement of probable cause. *Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). An arrest made in violation of these provisions is unlawful. *Perez Cruz v. Barr*, 926 F.3d 1128, 1137 (9th Cir. 2019); *Sanchez v. Sessions*, 904 F.3d 643, 650 (9th Cir. 2018).

50. A person is seized when, in view of all the circumstances, a reasonable person would not believe she was free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.); *see California v. Hodari D.*, 499 U.S. 621, 626 (1991). Whether a detention has become an arrest turns on the objective restraints imposed, not on the label an agency later attaches. *United States v. Del Vizo*, 918 F.2d 821, 824–25 (9th Cir. 1990). An applicant who arrives voluntarily for a government appointment does not consent to detention when personnel separate her from her spouse, hold her in a room she may not leave, and surrender her to ICE officers. The reasonableness of a seizure "must be measured by what the officers knew before they conducted their search," *Florida v. J.L.*, 529 U.S. 266, 271 (2000), and information obtained during a seizure, and a warrant issued afterward on the strength of it, cannot justify the seizure that produced it.

51. A question about a document might justify clarification. It does not, without more, supply probable cause to arrest or establish a likelihood of escape. *See* 8 C.F.R. § 287.8(b)(2), (c)(2); *Mountain High Knitting*, 51 F.3d at 218. And where an arrest is made without a judicial warrant, the Fourth Amendment requires a prompt determination of probable cause by a neutral arbiter as a prerequisite to extended restraint. *Gerstein v. Pugh*, 420 U.S. 103, 114, 125 (1975); *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). The Ninth Circuit has applied that principle to civil immigration detention. *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 824 (9th Cir. 2020).

52. Likelihood of escape is a separate predicate. Where the Government has not alleged grounds for a reasonable belief that the person was likely to escape, § 1357(a)(2) "forecloses the possibility of a permissible civil arrest." *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995). ICE's own nationwide policy, issued under the settlement of a class action challenging warrantless arrests made without particularized escape

determinations, requires "probable cause that the individual is likely to escape before a warrant can be obtained for the arrest"; directs officers to consider the totality of the circumstances known before the arrest, including whether the officer can "determine the individual's identity" and the person's "ties to the community (such as a family, home, or employment)"; and provides that "mere presence within the United States in violation of U.S. immigration law" is not, on its own, evidence of flight risk. *M-J-M-A- v. Hermosillo*, 822 F. Supp. 3d 1147, 1172 (D. Or. 2026) (quoting *Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1217–18 (D. Colo. 2025)); *see Castañon Nava v. Dep't of Homeland Sec.*, 806 F. Supp. 3d 823, 837–38 (N.D. Ill. 2025). Officers must document the facts and circumstances of a warrantless arrest, including their findings on escape risk, as soon as practicable. *M-J-M-A-*, 822 F. Supp. 3d at 1173.

53. The failure of immigration officers in this District to obtain warrants and to make the escape determination the statute requires is well known and documented. That problem has arisen largely in stops in the field, where officers encounter a person on the street and must decide on the spot whether she is likely to flee. After discovery, full briefing, and evidentiary hearings, a court in this District found "ample evidence that Defendants have an ongoing policy and practice of conducting warrantless arrests in violation of the requirement to conduct a likelihood-of-escape analysis." *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP, 2026 WL 2751388, at *14 (C.D. Cal. Sept. 2, 2026).[1]

54. Petitioner's case is the opposite of a field encounter. The warrantless-arrest exception exists for the officer who comes upon a person and has reason to believe she will escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2). A person who presents herself to the Government, at a time and place the Government chose, inside a federal facility, after disclosing her identity, address, and immigration history in a pending application, presents no flight concern at all. Nothing about her presence there could supply the second predicate the statute requires, and her unlawful presence alone cannot supply it. *Mountain High Knitting*, 51 F.3d at 218; *supra* ¶ 52.

[1] The Government has appealed.

55. Upon information and belief, Respondents had no warrant when they arrested Petitioner. No Form I-200 was shown to her, none has been produced since, and no Notice to Appear has been filed even now. *Supra* ¶¶ 39–40. Any Form I-200 Respondents might produce after the fact could not change that result. A Form I-200 is invalid unless a Notice to Appear was issued at or before the time it was executed, 8 C.F.R. § 236.1(b)(1); *M-J-M-A-*, ECF No. 170, at 9–11, and a warrant authorizes only an arrest. It does not supply the individualized custody determination that continued detention requires, 8 C.F.R. §§ 236.1(c)(8), 287.3(d); the notice, reasons, and opportunity to be heard that due process requires before the Government takes a person's liberty; a legitimate, nonpunitive purpose for detention; or the reasoned consideration of relevant factors the Administrative Procedure Act requires. *Infra* Counts Four and Six through Nine.

**E. A Later Warrant, 8 C.F.R. § 287.3, or a Later Bond Hearing Cannot Cure an Unlawful Arrest**

56. Section 287.3(d) requires officials to decide "within 48 hours of the arrest" whether the person will remain in custody or be released and whether a notice to appear and warrant of arrest "will be issued." 8 C.F.R. § 287.3(d). Those are post-arrest custody decisions, and they cannot supply the authority required to make the arrest. Section 287.3(a) applies to a person "arrested without a warrant of arrest under the authority contained in section 287(a)(2) of the Act," meaning § 1357(a)(2), and § 287.8(c)(2)(iv) directs the officer to follow § 287.3 only after an arrest that complies with the preceding requirements.

57. Courts have accordingly rejected a post-arrest warrant as a cure for an unlawful arrest. *Castro Chivalan v. LaRose*, No. 3:26-cv-04258-LEK-SBC, ECF No. 6, at 9 (S.D. Cal. Aug. 27, 2026) ("compliance with the procedural requirements under Section 287.3 says nothing about whether the preceding arrest itself complied with Section 1357(a)(2)"); *Urias v. Semaia*, No. 5:26-cv-02753-DTB, 2026 WL 1710375, at *4–6 (C.D. Cal. June 10, 2026); *Quezada-Estrada v. Lyons*, No. 1:26-cv-01599-NYW, 2026 WL 1361880, at *5 (D. Colo. May 15, 2026) ("a post hoc warrant does not permit detention that arose from an unlawful warrantless arrest"); *M-J-M-A-*, 822 F. Supp. 3d at 1158 ("[a]n arrest cannot be justified after

the fact”). A regulation cannot enlarge the arrest authority Congress granted. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400, 412 (2024). If a later warrant could validate an earlier warrantless arrest, the words “and is likely to escape before a warrant can be obtained” would do no work.

58. A later bond hearing does not cure an unlawful arrest either. An immigration judge deciding bond applies the factors in *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006), to decide whether a person already in custody should be released going forward, and has no authority to decide whether officers complied with § 1357(a)(2) or the Fourth Amendment. A bond hearing held after an unlawful arrest “is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip” a person of her freedom. *Juarez Evangelista v. Semaia*, No. 5:26-cv-04787-BFM, ECF No. 10, at 8 (C.D. Cal. Sept. 8, 2026) (quoting *Garcia-Maya v. Mattos*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *8 (D. Nev. July 7, 2026)); *see Castro Chivalan*, ECF No. 6, at 9 (“[p]roviding Petitioner a bond hearing would not remedy the Fifth Amendment violation he has already experienced. Only release from detention can accomplish that now”).

**F. Due Process Protects Petitioner’s Established Liberty**

59. The Due Process Clause protects “all ‘persons’ within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.” *Hernandez*, 872 F.3d at 990 (quoting *Zadvydas*, 533 U.S. at 693). “Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects.” *Zadvydas*, 533 U.S. at 690. The process due depends on the private interest affected, the risk of erroneous deprivation and the value of additional safeguards, and the Government’s interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

60. Petitioner was not previously released from ICE custody, and she does not rest her claims on a prior parole or order of supervision. But the absence of a prior detention does not end the inquiry. Courts in this District have ordered the immediate release of applicants arrested for the first time at required USCIS appointments, rejecting the contention that a prior

custody decision is a prerequisite to a protected liberty interest. *See infra* ¶ 67. The Government knew of Petitioner's presence for years, approved her husband's petition for her, received an application disclosing everything about her, and commanded her attendance. Her interest in the liberty she had lived in for two decades, in her home, with her family, is substantial.

61. Due process also protects Petitioner's interest in access to the procedures the immigration laws make available. A noncitizen has a protected interest in the right to seek relief even where there is no right to the relief itself. *Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003). Where immigration authorities have created a process by which noncitizens may apply for lawful status, and then use the requirements of that very process to prevent the applicant from pursuing it, "there is a chilling effect on due process." *Portillo Vasquez v. Turek*, No. 2:25-cv-00741, slip op. at 12 (D. Vt. Sept. 25, 2025) (granting habeas to permit petitioner to complete her biometrics appointment without interference). And the Ninth Circuit has expressed "grave doubt" that any statute allowing arbitrary detention without process could be constitutional. *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018).

**G. The Government May Not Weaponize a Mandatory Step in the Immigration Process for Enforcement Purposes**

62. In *Xiu Qing You v. Nielsen*, 321 F. Supp. 3d 451 (S.D.N.Y. 2018), DHS used a scheduled USCIS adjustment interview as the occasion to arrest the husband of a United States citizen and father of citizen children. The court held that the Government had used a benefits process "as a sword when it was intended to be used as a shield," rejected "arrest and detention practices predicated on manipulating the laws that Congress has passed," and explained that Congress did not intend its process "to become a mechanism for 'gotcha' law enforcement." 321 F. Supp. 3d at 466.

63. *You* involved a different benefits process and a prior removal order, but the I-601A program supplies an even more specific statement of purpose. DHS itself explained that it created the provisional waiver to reduce the separation of United States citizens from their family members. 78 Fed. Reg. at 536–37; 81 Fed. Reg. at 50,245–46. And unlike an interview an applicant might reschedule, I-601A biometrics are compulsory on pain of abandonment and

denial. 8 C.F.R. § 212.7(e)(6)(ii). The I-601A does not immunize an applicant from lawful enforcement, but DHS may not use the appearance its own regulation compels to accomplish what the arrest statutes forbid.

64. The APA requires courts to set aside agency action that is arbitrary, capricious, contrary to law, or in excess of statutory authority. 5 U.S.C. § 706(2)(A), (C). A court must examine "the reasons for agency decisions—or, as the case may be, the absence of such reasons." *Judulang v. Holder*, 565 U.S. 42, 53 (2011). An agency must consider the relevant factors and the serious reliance interests its prior course has engendered, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), and post hoc rationalizations cannot substitute for contemporaneous reasoning, *Arrington v. Daniels*, 516 F.3d 1106, 1112–13 (9th Cir. 2008).

**COURTS HAVE ORDERED IMMEDIATE RELEASE ON THESE FACTS**

65. Courts in this District and throughout this Circuit have ordered immediate release, rather than a bond hearing, where the Government arrested a noncitizen without a warrant and without the determination § 1357(a)(2) requires. *Dominguez Perez v. Acting Warden of the Adelanto Det. Ctr.*, No. 5:26-cv-03936-MBK, slip op. at 15 (C.D. Cal. July 30, 2026); *Urias v. Semaia*, No. 5:26-cv-02753-DTB, 2026 WL 1710375, at *6–7 (C.D. Cal. June 10, 2026); *Galvez Pantoja v. Dep't of Homeland Sec.*, No. 5:26-cv-02084-JDE, 2026 WL 1601897, at *4 (C.D. Cal. June 1, 2026); *Moreno Cristin v. Armant*, No. 5:26-cv-04024-DTB, ECF No. 10 (C.D. Cal. July 29, 2026); *Carbajal Torres v. Semaia*, No. 5:26-cv-03374-E, ECF No. 11 (C.D. Cal. June 29, 2026); *Castro Chivalan v. LaRose*, No. 3:26-cv-04258-LEK-SBC, ECF No. 6, at 7–10 (S.D. Cal. Aug. 27, 2026); *Gregorio v. LaRose*, No. 3:26-cv-03918-RBM-SBC, 2026 WL 2059095, at *1–2 (S.D. Cal. July 16, 2026); *Navarro Gomez v. Wofford*, No. 1:26-cv-05299 (VC), 2026 WL 2065708, at *3 (E.D. Cal. July 16, 2026).

66. Courts have likewise ordered release where the Government detained a noncitizen without the individualized custody determination § 1226(a) requires. *Hernandez Lopez v. Wofford*, No. 1:26-cv-08031-DAD-JDP, ECF No. 7, at 2–3 (E.D. Cal. Oct. 13, 2026); *Juarez Evangelista v. Semaia*, No. 5:26-cv-04787-BFM, ECF No. 10, at 5–9 (C.D. Cal. Sept. 8, 2026) ("[f]or utter lack of compliance with § 1226(a), Petitioner's detention was unlawful").

In *Dorantes Saldivar v. Warden of Adelanto ICE Processing Ctr.*, No. 5:26-cv-06400-DTB, ECF No. 14 (C.D. Cal. Nov. 6, 2026), decided the day Petitioner was arrested, the court found that the petitioner "was arrested without a warrant or any stated exception thereto," held that a later bond hearing "is no substitute" for the deliberative process § 1226(a) requires, and ordered release together with an injunction against re-detention without a hearing at which the Government bears the burden. *Id.* at 11–16.

67. Courts have applied those principles to arrests at USCIS appointments. In *Ma v. Warden*, No. 5:26-cv-05707-KK-DFM, ECF No. 9 (C.D. Cal. Oct. 8, 2026), the court ordered the immediate release of an applicant arrested at a USCIS biometrics appointment and enjoined re-detention without a hearing. In *Okeshov v. Santacruz*, No. 5:26-cv-06187-AS, ECF No. 12 (C.D. Cal. Nov. 3, 2026), the court ordered the release, without GPS or other monitoring, of an applicant arrested at a required USCIS appointment. And in *Qu v. Janecka*, No. 5:26-cv-05419-CTS, ECF No. 10 (C.D. Cal. Oct. 9, 2026), the court ordered the release within twenty-four hours of asylum applicants arrested without warrants while attending a scheduled biometrics appointment, concluding that the arrests violated 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii) where the Government failed to establish any likelihood of escape.

68. Most recently, in a case strikingly similar to this one, a magistrate judge recommended immediate release of a petitioner arrested at a scheduled USCIS asylum interview after being told his paperwork was incorrect, where the I-200 and Notice to Appear were issued the following day and the Government identified no facts satisfying any exception to the warrant requirement. *Raymundo Hernandez v. Warden, Golden State Annex*, No. 1:26-cv-08532-KES-CDB, ECF No. 7, at 2–4 (E.D. Cal. Nov. 10, 2026) (amended findings and recommendations). The recommendation rested on the absence of contemporaneous warrant authority, notwithstanding a later bond hearing. *Id.*

69. Here, Petitioner challenges the present lawfulness of her physical custody under a statutory framework that imposes affirmative prerequisites on arrest and detention. Because Respondents did not satisfy those prerequisites when they took her into custody, no later process can make that custody lawful, and immediate release is the only adequate remedy.

**EXHAUSTION IS NOT REQUIRED, AND SEEKING BOND WOULD BE FUTILE**

**A. No Statutory Exhaustion Requirement Applies**

70. No statute requires exhaustion before a habeas petition challenging immigration detention. *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). Any exhaustion requirement is prudential, and the Court may waive it. *Hernandez*, 872 F.3d at 988; *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). Prudential exhaustion is excused where agency remedies are inadequate or not efficacious, where pursuing them would be futile, where irreparable injury will result, or where the proceedings would be void. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). A court may require exhaustion only where agency expertise is needed to generate a proper record, where relaxing the requirement would encourage deliberate bypass of the administrative scheme, and where agency review is likely to allow the agency to correct its own mistakes. *Puga*, 488 F.3d at 815. None of those conditions is present here, and every ground for excusing exhaustion is.

**B. Neither an Immigration Judge Nor the Board Can Decide Whether the Arrest Was Lawful**

71. Neither an immigration judge nor the Board of Immigration Appeals may adjudicate constitutional claims. *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 804 n.2 (BIA 2020); *Matter of C-*, 20 I. & N. Dec. 529, 532 (BIA 1992). Neither decides in a custody proceeding whether officers complied with § 1357(a)(2), whether a Form I-200 existed when they made the arrest, or whether USCIS and ICE misused a compulsory benefits appointment. Because no administrative process exists for challenging an arrest, excusing exhaustion invites no one to bypass such a process, and because the error lies in the arrest itself, no agency decision could correct it. *See Liu v. Waters*, 55 F.3d 421, 426 (9th Cir. 1995).

72. A bond hearing would also invert the statutory sequence. The regulations require DHS to make the initial custody determination, 8 C.F.R. §§ 236.1(c)(8), 287.3(d), and place on the detainee the burden of establishing to the immigration judge's satisfaction that she is neither a danger nor a flight risk, *Rodriguez Diaz*, 53 F.4th at 1197. Respondents should not be

permitted to skip their own threshold obligation and then require Petitioner to carry the burden of proving her entitlement to the liberty they took without authority. *Quijay Garcia*, 2026 WL 1972386, at *5–8.

**C. Immigration Courts Can No Longer Serve as Neutral Arbiters**

73. Petitioner does not seek a bond hearing, which could not cure the arrest. *See supra* ¶ 58. Nor could the immigration court provide a neutral or effective remedy. Immigration judges are attorneys within the Department of Justice, appointed by and serving subject to the direction of the Attorney General, a Respondent here. 8 C.F.R. §§ 1003.0(a), 1003.10(a). "The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).

74. That subordination has shaped custody outcomes in this District. After *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), immigration judges repeatedly held that noncitizens in Petitioner's position were subject to mandatory detention and could not be released on bond at all, a position the Ninth Circuit has since rejected. *Rodriguez Vazquez*, 183 F.4th at 1164–65. A former immigration judge of the Denver Immigration Court, Brea Burgie, has attested that the Chief Immigration Judge instructed all immigration judges that *Yajure Hurtado* remained binding notwithstanding the final judgment of this District in *Maldonado Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025); that when she nonetheless found jurisdiction to consider bond, she was removed from all detained cases within two days and her supervisor reversed her prior bond grants; and that immigration judges were warned that failure to follow "agency policy" could result in discipline up to termination. Robinson Decl. Ex. J ("Burgie Decl.") ¶¶ 4, 9–15. A court of this District has likewise found that immigration judges "continue to rely on legal interpretations that were expressly found unlawful." *Palomera Baltazar v. Janecka*, No. 5:26-cv-00019-SSS-BFM, 2026 WL 413734, at *2–3 (C.D. Cal. Jan. 16, 2026).

75. The Adelanto Immigration Court's own records reflect the same shift. Zabdi J. Salazar, a Ph.D. candidate in Jurisprudence and Social Policy at Berkeley Law, has analyzed EOIR's administrative bond records for the Adelanto Immigration Court from January 1, 2024

through April 30, 2026. Robinson Decl. Ex. H ("Salazar Decl.") ¶¶ 1–2, 5. Comparing bond records completed before and after November 10, 2025, the period of an alleged EOIR directive concerning bond adjudications, denials rose from 39.3% to 57.4% of completed Adelanto bond records while the grant rate fell from 37.0% to 25.7%. *Id.* ¶¶ 12–13. The median recorded bond rose from $7,500 to $10,000, and the share of bonds recorded above $15,000 more than doubled, from 9.8% to 23.8%. *Id.* ¶¶ 15–16. Denials as a share of completed records increased for all eleven immigration judges shown in the data. *Id.* ¶ 23. Among California's detention-facility immigration courts, Adelanto was the only one with both a higher mean and a higher median recorded bond after November 10, and the only one whose grant rate declined. *Id.* ¶¶ 26–27.

76. Sending Petitioner to that forum would also place the cost of the Government's unlawful arrest on a United States citizen family that has already paid for counsel and government fees to pursue the lawful immigrant visa process, that has no savings, and that has lost Petitioner's labor and care. *Supra* ¶ 31. Requiring Mr. Moran Jerez to retain detention counsel, litigate bond, and post thousands of dollars to restore the liberty his wife had before an unauthorized arrest would compound the violation rather than remedy it. The bond process should not operate as a price a citizen family must pay for relief from custody the Government had no authority to initiate.

**D. The Bond Process, Including Any Appeal to the Board, Would Be Futile and Would Only Prolong an Unlawful Detention**

77. Petitioner has not sought a custody redetermination, and she should not be required to do so before this Court acts. A bond hearing could not address the claims at the core of this Petition, *supra* ¶ 58, and requiring her to seek one would simply route her through a process that cannot provide the remedy she needs: an immigration judge who is not a neutral arbiter, *supra* ¶ 73, followed, if bond is denied or set beyond her family's means, by an appeal to a Board that is no more independent and takes months to decide detained appeals.

78. Nor is the Board independent of the Attorney General. Its members are attorneys appointed by the Attorney General to act as his delegates in the cases that come before them,

and it is bound by his decisions. 8 C.F.R. § 1003.1(a)(1), (d)(1). The Attorney General may direct that any case be referred to him for decision. *Id.* § 1003.1(h)(1). It was the Board, in *Yajure Hurtado*, that adopted the position that persons in Petitioner's position may not be released on bond at all. 29 I. & N. Dec. at 216.

79. Any appeal from a bond denial would itself inflict irreparable harm through delay. EOIR's records of direct bond appeals show that the median time to decision rose from 87 days in the fourth quarter of 2025 to 200 days in the first quarter of 2026. Robinson Decl. Ex. I ("Salazar BIA Decl.") ¶ 12. In the fourth quarter of 2025 and the first quarter of 2026, the Board sustained no bond appeal filed by a noncitizen. *Id.* ¶¶ 19, 25. Courts regularly waive exhaustion for that reason. *See W.T.M. v. Bondi*, No. 2:25-cv-02428-RAJ-BAT, 2026 WL 262583, at *3 (W.D. Wash. Jan. 30, 2026); *Y.S.G. v. Andrews*, No. 2:25-cv-1884-SCR, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025). For a mother separated from her minor child and a husband whose medical care depends on her, months of bond litigation and appeal cannot restore what is lost in the meantime, and neither the immigration judge nor the Board could decide the claims that are the core of this Petition in any event.

**E. Continued Detention Is Irreparable Harm**

80. "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018). The Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez*, 872 F.3d at 995. Every additional day of confinement keeps Petitioner from her son, from the husband whose health the I-601A record shows depends on her, and from the immigration process she was pursuing when Respondents took her.

## CLAIMS FOR RELIEF

## COUNT ONE

### Warrantless Arrest Without Statutory Authority: 8 U.S.C. §§ 1226(a), 1357(a)(2)

81. Petitioner repeats and incorporates by reference each allegation in the preceding paragraphs.

82. Section 1226(a) permits an arrest only on a warrant issued before the arrest. *Jennings*, 583 U.S. at 302. No warrant for Petitioner has been produced, and on information and belief none existed when USCIS personnel and ICE officers restrained her at the ASC. *Supra* ¶ 39.

83. Nor did § 1357(a)(2) authorize the arrest. Whatever officers believed about Petitioner's status, no officer could have reasonably believed that she was likely to escape before a warrant could be obtained. She had identified herself to the Government in a sworn application, disclosed her home address, retained counsel, and appeared at the exact time and place USCIS designated. Because she presented herself to the Government, there was no flight concern at all. Her husband was waiting for her. She was inside the ASC, separated from him by USCIS personnel. Those are the facts ICE's own policy identifies as weighing against flight: a known identity, a home, and a family. *Supra* ¶ 52. The only reason any officer gave, that she was not in the United States legally, is the first predicate of § 1357(a)(2), not the second, and it cannot satisfy both. 8 U.S.C. § 1357(a)(2); *supra* ¶¶ 52, 54.

84. The circumstances of the arrest foreclose any claim of exigency. If ICE selected Petitioner for arrest before her appointment, its ability to plan the arrest proves that it had time to obtain a warrant. If ICE decided to arrest her only after USCIS personnel raised a question about her documents, that question established neither probable cause of removability nor any likelihood of escape, and nothing prevented officers from seeking a warrant while she remained inside the ASC. Either way, the warrantless-arrest exception was unavailable. The Government cannot convert the compliance that made Petitioner accessible into a reason to dispense with the statute's safeguards.

85. No officer documented any escape determination, and on information and belief none was made. *Supra* ¶ 39. ICE's own policy requires officers to document the facts supporting a warrantless arrest, including their findings on escape risk, and no such documentation has been produced. *M-J-M-A-*, 822 F. Supp. 3d at 1173; *supra* ¶ 52.

86. Petitioner did not need to be pursued, located, or kept from fleeing. She presented herself to the Government at its direction, and from the moment she checked in at the

ASC there was no flight concern for any officer to address. The warrantless-arrest exception, designed for encounters in the field, has no application to a person who walks into a federal facility because the Government told her to. *Supra* ¶¶ 53–54. That the failure to obtain warrants is a documented practice in this District, *supra* ¶ 53, only underscores why Respondents cannot be presumed to have complied with the statute here.

87. An arrest made without the authority § 1226(a) or § 1357(a)(2) requires is unlawful. *Perez Cruz*, 926 F.3d at 1137; *Sanchez*, 904 F.3d at 650; *Mountain High Knitting*, 51 F.3d at 218. Petitioner remains in the custody that began with that arrest, and release is required.

**COUNT TWO**

**Violation of 8 C.F.R. § 287.8(c)(2): Warrantless Arrest Without Reason to Believe Petitioner Was Likely to Escape**

88. Petitioner repeats and incorporates by reference each allegation in the preceding paragraphs.

89. ICE's own regulations independently govern warrantless arrests. "A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii). An arrest may be made only when the officer has reason to believe that the person to be arrested is in the United States illegally, *id.* § 287.8(c)(2)(i), and the "reason to believe" standard is the equivalent of probable cause under the Fourth Amendment, *Perez Cruz*, 926 F.3d at 1137; *Tejeda-Mata*, 626 F.2d at 725.

90. Respondents arrested Petitioner without a warrant and without any specific, individualized basis to believe that she was likely to escape. To the contrary, Petitioner had disclosed her identity, address, and immigration history to the Government in her I-601A, appeared at the time and place USCIS designated, and was waiting inside the ASC, with her husband nearby, when ICE officers took her into custody. *Supra* ¶¶ 33–35. Her compliance with the Government's directive affirmatively demonstrated that she was not a flight risk.

91. An arrest made in violation of § 287.8(c)(2) is unlawful. *Sanchez*, 904 F.3d at 650; *Perez Cruz*, 926 F.3d at 1137; *Qu*, ECF No. 10. Petitioner remains in the custody that began with that unlawful arrest, and release is required.

**COUNT THREE**

**Arrest Without a Pre-Existing Warrant or Notice to Appear: 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(b)(1), 287.5(e)(2)**

92. Petitioner repeats and incorporates by reference each allegation in the preceding paragraphs.

93. If Respondents produce a Form I-200, it cannot authorize Petitioner's arrest unless it was validly issued and in existence when she was first restrained. Whether a seizure is an arrest turns on the objective restraints imposed, not on the moment an agency form first uses the word. *Del Vizo*, 918 F.2d at 824–25. The relevant moment is when Petitioner ceased to be free to leave the ASC, not when she was booked at Adelanto or served with paperwork. A Form I-200 signed after that moment, even one bearing the same date, does not convert the seizure into a warrant arrest. *Dorantes Saldivar*, ECF No. 14, at 12 (petitioner arrested without a warrant where the Form I-200, though dated the day of the arrest, appeared to have been issued after it); *Castro Chivalan*, ECF No. 6, at 8–9; *Urias*, 2026 WL 1710375, at *4–6.

94. Any I-200 would also be invalid if no Notice to Appear had been issued when it was signed, 8 C.F.R. § 236.1(b)(1); *M-J-M-A-*, ECF No. 170, at 9–11, or if it was signed by a supervisor who participated in planning or conducting the operation rather than by a sufficiently independent officer, *Abel*, 362 U.S. at 236; *M-J-M-A-*, ECF No. 170, at 11, 20–21. An arrest under an invalid warrant "is necessarily a warrantless arrest," *id.* at 11, which must satisfy § 1357(a)(2) and, for the reasons in Count One, cannot.

95. No Form I-200 or Notice to Appear was served on Petitioner or provided to her counsel, and six days after her arrest no Notice to Appear had been filed with the immigration court. *Supra* ¶¶ 39–40; Robinson Decl. Ex. G. A Notice to Appear that the Government has still not filed cannot have been issued, as 8 C.F.R. § 236.1(b)(1) requires, before Petitioner was taken into custody. Petitioner was therefore arrested without a valid, pre-existing warrant, and

her arrest was a warrantless arrest that, for the reasons stated in Count One, § 1357(a)(2) did not authorize. That defect "alone is sufficient to render the arrest improper and justify Petitioner's release." *Quintero Meza*, 2026 WL 2875630, at *3; *Zurita Navarro*, 2026 WL 2294963, at *2. Nor could any Form I-200 Respondents might now produce cure that defect, because no Notice to Appear existed when Petitioner was arrested. *Supra* ¶ 55.

**COUNT FOUR**

**Detention Without an Individualized Custody Determination: 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(c)(8), 287.3(d)**

96. Petitioner repeats and incorporates by reference each allegation in the preceding paragraphs.

97. Section 1226(a) and its regulations require the arresting agency, before or at the time of detention and in any event within 48 hours of a warrantless arrest, to determine whether the person will be continued in custody or released, considering whether release would pose a danger and whether she is likely to appear. 8 C.F.R. §§ 236.1(c)(8), 287.3(d). On information and belief, no officer made that determination for Petitioner. She has received no Form I-286, no Notice of Custody Determination, and no statement of any reason for her detention beyond the fact that she lacks status. *Supra* ¶ 39.

98. Had an officer made that determination, every relevant fact would have favored release: more than twenty years of residence at a known address, a United States citizen husband and son, nearly two decades of steady work, no criminal history of any kind, no prior immigration violation beyond the entry her pending application addresses, and a record of complying with the Government's directives up to and including appearing at the appointment where she was arrested. An undifferentiated assertion of unlawful presence cannot explain why confinement was necessary.

99. Detention without the initial custody determination § 1226(a) requires is unlawful, and courts in this District have ordered release on that ground alone. *Dorantes Saldivar*, ECF No. 14, at 11–16; *Juarez Evangelista*, ECF No. 10, at 5–9; *see Zurita Navarro*, 2026 WL 2294963, at *2–3; *Quijay Garcia*, 2026 WL 1972386, at *5–8. Petitioner should not

be required to guess the agency's reasons and then disprove them before an immigration judge when the agency never completed the threshold evaluation in the first place.

**COUNT FIVE**

**Violation of the Fourth Amendment: Unreasonable Seizure**

100. Petitioner repeats and incorporates by reference each allegation in the preceding paragraphs.

101. Petitioner was seized when USCIS personnel separated her from her husband and held her in an area she was not free to leave, and at the latest when ICE officers announced that she was being detained. *Mendenhall*, 446 U.S. at 554. At that moment, no warrant authorized the seizure, and officers had no basis to believe she was likely to escape before one could be obtained. *Supra* Count One. An unexplained question about an identity document did not supply probable cause, and information gathered after she was restrained cannot justify the restraint. *J.L.*, 529 U.S. at 271.

102. No judge or neutral officer has since determined that probable cause supports Petitioner's continued detention. *Gerstein*, 420 U.S. at 114, 125; *Gonzalez*, 975 F.3d at 824. Her seizure and continued detention violate the Fourth Amendment. Petitioner does not seek suppression of evidence in removal proceedings; she seeks release from custody that began with, and continues to depend on, an unlawful seizure.

**COUNT SIX**

**Violation of the Fifth Amendment: Procedural Due Process**

103. Petitioner repeats and incorporates by reference each allegation in the preceding paragraphs.

104. The Due Process Clause requires constitutionally adequate procedures before the Government may deprive a person of liberty through civil detention, and courts determine what process is due by weighing (1) the private interest affected, (2) the risk of erroneous deprivation through the procedures used and the probable value of additional safeguards, and (3) the Government's interest, including the burdens additional procedures would entail. *Mathews*, 424 U.S. at 335. The Government's discretion to detain under § 1226(a) is not

"unlimited" and must comport with due process. *Zadvydas*, 533 U.S. at 698. Each factor weighs decisively in Petitioner's favor.

105. *Private interest.* Petitioner has a substantial liberty interest in remaining free from confinement. *Zadvydas*, 533 U.S. at 690. That interest is heightened by more than twenty years of life in the community at an address known to the Government, by her marriage to a United States citizen whose petition for her the Government approved, by her care of a minor United States citizen child, and by her participation in a Government process that required her to disclose everything about herself and appear when told. *Ma*, ECF No. 9; *Okeshov*, ECF No. 12. She was doing exactly what the Government directed her to do when it took her liberty.

106. *Risk of erroneous deprivation.* The risk of erroneous deprivation is high, and the value of additional process substantial. Respondents relied on nothing but a lack of status the Government had known about for years and that her pending application addresses. They made no individualized assessment of danger or flight, gave Petitioner no notice of the basis for her detention, and gave her no opportunity to be heard. The risk of erroneous deprivation is considerable where a person has received no custody determination at all. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Any process, including the initial custody determination the regulations already require, would have revealed that detention served no legitimate purpose.

107. *Government interest.* The Government's interest in dispensing with process was negligible. "In immigration court, custody hearings are routine," *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025), and the burden of the initial custody determination the regulations already require is minimal. USCIS set the appointment in advance at its own facility; Respondents knew exactly where and when Petitioner would be and had every opportunity to evaluate whether detention was warranted and to obtain lawful authority beforehand. Balancing these factors, Petitioner's detention without notice, reasons, or any opportunity to be heard violates the Due Process Clause, and only her release can remedy that violation.

**COUNT SEVEN**

**Violation of the Fifth Amendment: Substantive Due Process (Arbitrary, Punitive, and Retaliatory Detention)**

108. Petitioner repeats and incorporates by reference each allegation in the preceding paragraphs.

109. Civil immigration detention must bear a reasonable relation to its only legitimate purposes, ensuring appearance and protecting the community. *Zadvydas*, 533 U.S. at 690–92; *Jackson*, 406 U.S. at 738; *Demore v. Kim*, 538 U.S. 510, 528 (2003). The Due Process Clause protects against "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Petitioner's detention serves neither legitimate purpose. She has no criminal record, and she was arrested at the very appointment she obeyed the Government's order to attend.

110. No legitimate, nonpunitive purpose supports Petitioner's detention. Civil immigration detention must be nonpunitive in purpose and effect, *Zadvydas*, 533 U.S. at 690, and it is permissible only as a regulatory measure reasonably related to a legitimate governmental objective, not as punishment, *Salerno*, 481 U.S. at 746–47. Detention is not needed to secure Petitioner's appearance: she has lived at the same known address for years, has a United States citizen husband and minor child, has pursued every step of the lawful immigrant visa process through counsel, and was taken into custody while complying with a Government directive to appear. *Supra* ¶¶ 22–33. Detention is not needed to protect the community: she has never been arrested, charged, or convicted of any offense. *Supra* ¶ 22. And detention cannot be justified as a means of facilitating removal, because Respondents have not even initiated removal proceedings, *supra* ¶ 40; Robinson Decl. ¶¶ 18–19 & Ex. G, and the process Petitioner is pursuing would itself have her depart for her consular interview. The only reason any officer gave, that she is not in the United States legally, is not a purpose of detention at all; treating it as one "effectively equates unlawful status with being an automatic flight risk," *Garcia Miranda v. Hernandez*, No. 2:26-cv-00906-JNW, 2026 WL 1328227, at *4 (W.D. Wash. May 13, 2026), and converts discretionary detention into "de facto mandatory

detention," *Segura Serrano v. Scott*, No. 2:26-cv-01268-LK, 2026 WL 1674357, at *6–7 (W.D. Wash. June 1, 2026). Detention that serves no legitimate, nonpunitive purpose is punishment, and the Due Process Clause forbids it. *See Lewis*, 523 U.S. at 846–47; *Jackson*, 406 U.S. at 738.

111. The manner of Petitioner's detention independently offends due process. Respondents had every opportunity for deliberation. The Government compelled Petitioner's attendance under threat of abandoning her application, separated her from her husband on the strength of an unexplained document question, and surrendered her to ICE officers in a closed room, then justified the arrest by the one fact her pending application was designed to address. Using a procedure DHS created to reduce the separation of citizen families as the instrument for separating this one, with the hardship to her husband and son documented in the Government's own file, is arbitrary executive action the Due Process Clause forbids. *See Lewis*, 523 U.S. at 846–53; *You*, 321 F. Supp. 3d at 466.

112. Respondents' conduct also deprived Petitioner of her protected interest in pursuing the relief Congress and DHS made available to her. *Arevalo v. Ashcroft*, 344 F.3d at 15. Immigration authorities created the I-601A process for applicants exactly like Petitioner and required her to appear for biometrics to pursue it; they then used that appearance to detain her and to prevent her from completing it. When the requirements of a process are used to prevent a person from accessing the relief it offers, "there is a chilling effect on due process." *Portillo Vasquez*, slip op. at 12. Using the coercive power of detention to punish an applicant for complying with the Government's own directive, when she posed no danger and no flight risk, shocks the conscience. *See Lewis*, 523 U.S. at 846–47. No legitimate governmental interest supports it, and the Constitution forbids it.

## COUNT EIGHT

### Violation of the Administrative Procedure Act: Arbitrary and Capricious Agency Action and Abuse of Discretion: 5 U.S.C. § 706(2)(A)

113. Petitioner repeats and incorporates by reference each allegation in the preceding paragraphs.

114. Respondents' decision to arrest and detain Petitioner is final agency action: it consummated the agency's custody decision and produced immediate legal consequences. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Petitioner does not challenge any decision to commence proceedings or any exercise of prosecutorial discretion. She challenges the lawfulness of the arrest and detention themselves, and the use of a compulsory USCIS benefits appointment to effect them without the authority the statutes require.

115. The APA directs reviewing courts to hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency acts arbitrarily when it fails to consider an important aspect of the problem or fails to articulate a rational connection between the facts found and the choice made. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

116. Respondents gave no reason for the arrest other than a lack of status already disclosed in the application USCIS was processing. *Judulang*, 565 U.S. at 53. They failed to consider the relevant factors, including the approved I-130, the pending I-601A, the documented hardship to Petitioner's husband and child, her two decades of residence, her lack of any criminal history, and her compliance with the Government's directives, and they ignored the reliance interests created by a regulation that required her to appear on pain of abandonment. *Fox Television Stations*, 556 U.S. at 515. They made no individualized assessment of flight risk or danger before taking her liberty, and no material change in circumstances suggested that she posed either. And they used a required step in a program DHS established to reduce family separation as the means of imposing it, frustrating the very adjudication USCIS had summoned her to complete. *You*, 321 F. Supp. 3d at 466. Any explanation Respondents develop in litigation cannot cure the absence of contemporaneous reasoning. *Arrington*, 516 F.3d at 1112–13. Respondents' decision to arrest and detain Petitioner was arbitrary, capricious, and an abuse of discretion.

117. The Court should hold unlawful and set aside Respondents' decision to arrest and detain Petitioner and order her release. 5 U.S.C. §§ 704, 706(2)(A). Petitioner seeks the same relief independently under 28 U.S.C. § 2241.

**COUNT NINE**

**Violation of the Administrative Procedure Act: Agency Action Not in Accordance with Law, in Excess of Statutory Authority, and Without Observance of Procedure Required by Law: 5 U.S.C. § 706(2)(A), (C), (D)**

118. Petitioner repeats and incorporates by reference each allegation in the preceding paragraphs.

119. The APA also requires reviewing courts to hold unlawful and set aside agency action that is "otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), "in excess of statutory jurisdiction, authority, or limitations," *id.* § 706(2)(C), or taken "without observance of procedure required by law," *id.* § 706(2)(D).

120. Respondents' arrest and detention of Petitioner were not in accordance with law and exceeded their statutory authority, because they arrested her without a pre-existing warrant and without satisfying the narrow warrantless-arrest exception of 8 U.S.C. § 1357(a)(2). *Supra* Counts One and Three; *see Arizona*, 567 U.S. at 407–08. They also acted without observance of the procedures required by 8 C.F.R. §§ 236.1(b)(1), 236.1(c)(8), 287.3(d), and 287.8(c)(2), by arresting her without a prior or contemporaneous Notice to Appear, without reason to believe she was likely to escape, and without any individualized custody determination. *Supra* Counts Two through Four. A court in this District has ordered the release of applicants arrested without warrants at a scheduled USCIS biometrics appointment on precisely this basis. *Qu*, ECF No. 10.

121. The Court should hold unlawful and set aside Respondents' arrest and detention of Petitioner under 5 U.S.C. § 706(2)(A), (C), and (D) and order her release. Separately and independently, Petitioner seeks the same relief under 28 U.S.C. § 2241.

**REMEDY: IMMEDIATE RELEASE AND PROTECTION AGAINST RE-DETENTION**

122. Release is the appropriate remedy for each of the violations set out above, whether the Court rests its decision on the arrest, on the absence of any custody determination, or on the Constitution. "The purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). Where detention "has been unlawful from the outset," the "most appropriate remedy" is "to return Petitioner to the previous status quo by releasing him from detention." *Juarez Evangelista*, ECF No. 10, at 7–8 (quoting *Huerta Reyes v. Santacruz*, No. 5:26-cv-03394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026)); *accord Dorantes Saldivar*, ECF No. 14, at 11–16. This Court may dispose of the matter "as law and justice require." 28 U.S.C. § 2243.

123. An order directing Respondents to supply the omitted process, or a bond hearing, would not remedy the violation. Completing the § 1226(a) sequence now would put Petitioner where she would have been had Respondents processed her correctly after seizing her without authority, not where she would have been had that seizure never occurred, which is at home with her husband and child, her I-601A pending. A contrary rule would reward the conduct at issue: ICE could use mandatory immigration appointments to take physical control of applicants identified in advance, arrest them without a warrant or escape determination, prepare the paperwork afterward, and then insist that the family pay a bond to undo the confinement. That would erase the statutory distinction between authority to arrest and discretion to release.

124. The Court should order Petitioner's release on her own recognizance, on the same terms on which she lived in the community before November 6, 2026. She lived here for more than twenty years without GPS, ankle monitoring, SmartLINK, or any reporting requirement; she has no criminal history; and no officer or judge has found that she presents a danger or a flight risk. *Castro Chivalan*, ECF No. 6, at 9–10 (ordering release within twenty-four hours, return of property, and no placement in Alternatives to Detention); *Okeshov*, ECF No. 12.

125. Release alone would not afford complete relief, because it would leave Respondents free to re-detain Petitioner on the same unlawful basis. The Court should enjoin re-detention without notice and a pre-deprivation hearing before an immigration judge at which the Government bears the burden of justifying detention by clear and convincing evidence. *See Boumediene v. Bush*, 553 U.S. 723, 779–80 (2008); *Dorantes Saldivar*, ECF No. 14, at 16; *Singh*, 638 F.3d at 1203. Such relief is especially warranted here because Respondents have already shown that they will use a compulsory USCIS appointment to accomplish an arrest the statute does not authorize; Petitioner should not be left to depend on their good faith not to do so again. Such an order would not foreclose lawful enforcement action supported by genuinely new and independently established grounds.

126. Finally, the Court should ensure that the challenged arrest does not itself defeat the administrative process Petitioner was pursuing. Petitioner was arrested at the biometrics appointment her I-601A required. Respondents should be ordered to preserve her I-601A file and not to treat any failure to complete biometrics caused by her detention as an abandonment of the application under 8 C.F.R. § 212.7(e)(6)(ii). Petitioner does not ask this Court to adjudicate the waiver or confer any status; she asks only that the Government not be permitted to benefit from its own unlawful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

1. Assume jurisdiction over this matter and issue an order to show cause requiring Respondents to file a return within three days certifying the true cause of Petitioner's detention, 28 U.S.C. § 2243;
2. Order that Respondents not transfer Petitioner outside the Central District of California during the pendency of this Petition;
3. Should Respondents attempt to defend Petitioner's detention, order them to produce with their return: (a) any Form I-200 issued for Petitioner, together with native electronic records and audit trails showing when it was requested, prepared, approved, signed, issued, and executed; (b) any Notice to Appear, together with

records showing when it was prepared, signed, issued, and served; (c) records identifying the officer who signed any Form I-200 and that officer's delegated authority and role in Petitioner's arrest; (d) any Form I-213, Form I-286, or other record of a custody determination; (e) any record of a pre-arrest determination that Petitioner was likely to escape before a warrant could be obtained; (f) USCIS records of Petitioner's November 6, 2026 appointment, including check-in, processing notes, any record of the asserted document discrepancy, and the time she was directed to wait apart from her husband; and (g) all communications, referrals, target lists, and operational plans between or within ICE and USCIS identifying Petitioner, or applicants scheduled at the ASC on November 6, 2026, for enforcement action;

4. Declare that Petitioner's arrest and continued detention violate 8 U.S.C. §§ 1226(a) and 1357(a)(2), their implementing regulations, the Fourth and Fifth Amendments, and the Administrative Procedure Act;
5. Issue a writ of habeas corpus ordering Respondents to release Petitioner immediately on her own recognizance, and in no event more than twenty-four (24) hours after this Court's order, under the same conditions that existed before her arrest on November 6, 2026, without bond, GPS monitoring, ankle monitoring, SmartLINK, enrollment in the Intensive Supervision Appearance Program ("ISAP"), reporting requirements, geographic, travel, or movement restrictions, or any other Alternatives to Detention restriction, and to return all property and documents taken from her;
6. Order Respondents to refrain from imposing any new or more restrictive conditions of supervision as a consequence of the November 6, 2026 arrest and detention, restoring the status quo ante;
7. Order Respondents to file a status report confirming Petitioner's release, and any conditions imposed, within forty-eight (48) hours of release;

8. Enjoin Respondents from re-detaining Petitioner without first providing at least seven (7) days' notice and a hearing before an immigration judge, held prior to any re-detention, at which the Government bears the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or a risk of flight and that no condition or combination of conditions of release would reasonably assure her appearance and the safety of the community;
9. Order Respondents to preserve Petitioner's Form I-601A file and not to treat any failure to complete biometrics resulting from her detention as an abandonment of that application;
10. Award Petitioner reasonable attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, or any other applicable law; and
11. Grant such other and further relief as this Court deems just and proper.

Dated: November 12, 2026

Respectfully submitted,
/s/ Emily L. Robinson
Emily L. Robinson (SBN 285343)
Law Office of Emily L. Robinson
5012 Eagle Rock Blvd.
Los Angeles, CA 90041
Counsel for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I, Emily L. Robinson, am an attorney admitted to practice law in the State of California and represent Petitioner, Maria del Rosario Vázquez Ramírez. I submit this verification on Petitioner's behalf because she is detained and because many of the allegations of this Petition require legal knowledge she does not possess. I have read the foregoing Petition. Its factual allegations are based on my communications with Petitioner and those close to her, including her husband, Walter Alfredo Moran Jerez, and on the documents attached as exhibits to the accompanying Declaration of Emily L. Robinson. I verify under penalty of perjury under the laws of the United States that the factual statements in the Petition are true and correct to the best of my knowledge, information, and belief.

Dated: November 12, 2026

/s/ Emily L. Robinson
Emily L. Robinson (SBN 285343)
Counsel for Petitioner